HAGERSTOWN AGRICULTURAL IMPLEMENT MANUF'G CO. (BIRDSALL v.). See Cases Nos. 1,436 and 1,437.

HAGERTY (TYLER v.). See Case No. 14,308.

———

## Case No. 5,900.

### HAGGETT v. BOWMAN et al.

[1 Sawy. 4.] [1]

District Court, D. California. Jan. 10, 1870.

SHIPPING—MASTER—ERROR IN JUDGMENT—INSUFFICIENCY OF TACKLE AND APPAREL.

1. An error in judgment on the part of a master not shown to be incompetent in respect to the navigation of the vessel, will not render the owners liable for its consequences.

2. A deduction from the monthly hire will be made, where the voyage has been protracted by reason of the insufficiency of the sails, etc.

[In admiralty. Libel by Thomas Haggett against J. W. Bowman and others.]

Pixley & Harrison, for libellant.

James McCabe, for claimants.

HOFFMAN, District Judge. This is an action brought by the master to recover the monthly hire of the vessel of which libellant was master, as stipulated by charter party. The execution of the charter party is not denied. The defense set up is that the master was incompetent, that he unnecessarily delayed the voyage, thereby defeating its objects, and that the sails of the vessel were old, and unfit for use. It is not pretended that the master willfully attempted to thwart the designs of the charterers. They appear to have

———

[1] [Reported by L. S. B. Sawyer, Esq., and here reprinted by permission.]

been engaged in a somewhat undefined enterprise, of which the principal objects were to trade with the natives of Alaska, and to search for mines or mineral lodes.

That the voyage, both going and returning, was unusually long is evident. But it is far from clear that this was owing to the fault of the libellant. The expedition appears to have been very imperfectly organized, and, as Lew, the steward, expresses it, there was "neither head nor tail to the vessel's management." Capt. Bowman, who was in charge of the expedition, seems also to have had more or less share in the navigation of the vessel.

Mr. Lew states that there was a good deal of talk and disturbance and jarring among the crew, but he cannot say that it was caused by Capt. Haggett more than any one else. There was evidently more time consumed in reaching the point for which they started, than would have been necessary if the vessel had taken the proper course, but this Mr. Lew declines to attribute to the fault of Capt. Haggett, as no observation had been taken for three days, and no reckoning obtained. Some difference of opinion existed as to the propriety of going close in to the shore, anchoring, etc. But these matters may, I think, be considered as left to the master's discretion. He appears to have been interested in the adventure. He is acquitted of all intention to frustrate its objects, or impede the operations of his associates, and even if he did commit an error of judgment, and was as Capt. Bowman says, "too much afraid of the land," that circumstance affords no reason why the charterers should not pay the stipulated sum for the hire of the vessel.

It has seemed to me that the respondents are attempting to attribute to the fault of the libellant the failure of an enterprise, the want of success of which was due to other causes.

It is established beyond controversy, that the sails were old, and required continual repairs. Mr. Lew states that this caused danger, delay and much inconvenience. So far as I can gather from the terms of this very inartificially drawn charter party, the hirers of the vessel were to furnish a full crew, provisions, and utensils for the voyage, and to pay all port charges and other expenses that might accrue on the voyage and fitting out of the vessel.

The libellant has presented a claim for various expenses incurred by him. I hardly think it could have been intended by the parties, that anchors, flags, and other articles necessary to the vessel, and which still remain on board as part of her apparel, furniture, and appurtenances, should be paid for by the hirers and retained by the master. The sums paid for these articles should, therefore, be deducted from the account by the master. I think, too, that the condition of the sails, to some extent protracted the voyage, and as the vessel was hired by the month a deduction should be made on that account. The whole time during which she was engaged

in the service was three months and nine days, at the rate of $150 per month.

The bill of Wright & Bowne, sworn to as correct by the master, is $143.44.

From this should be deducted, for anchor, etc.

| | |
|---|---|
| chor, etc. | $29 10 |
| For side lights, (lanterns) | 21 50 |
| For hand leads and line | 4 75 |
| | $55 35 |

The bill for custom-house fees—$13.50—appears to be properly chargeable to the respondents. There is also to be deducted $20, paid to libellant by Mr. Lew on account of his disbursements.

| | | |
|---|---|---|
| I shall deduct from the monthly hire, otherwise due, the hire for nine days, and allow the libellant $150 per month for the period of three months | | $450 00 |
| For outfit, charges, etc. | $143 44 | |
| C. H. fees | 13 50 | |
| | | $256 94 |
| Less for anchor, etc. | $55 35 | |
| Amount paid by Lew | 20 00 | |
| | $75 35 | |
| | | $181 59 |
| Total | | $626 59 |

For which sum, in gold coin, a decree will be entered.

[NOTE. The figures given above are apparently in error so far as the total is concerned; they are reprinted from the original report.]